J-S11029-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: O.J.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1464 WDA 2019 |

Appeal from the Decree Entered August 22, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
65 in Adoption 2019

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: T.S.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1465 WDA 2019 |

Appeal from the Order Dated August 22, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
65A in Adoption 2019

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    FILED APRIL 29, 2020

N.B. (Father) appeals from the decrees involuntarily terminating his parental rights to his daughters, O.J.B., born in June 2017, and T.S.B., born in April 2016 (collectively, Children).  Additionally, Father's counsel (Counsel), seeks to withdraw from representation pursuant to Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349, 361 (Pa.

2009). Upon review, we grant Counsel's petition to withdraw and affirm the termination of Father's parental rights.

Children were placed in the custody of Erie County Office of Children and Youth (the Agency) on August 7, 2018, due to conditions associated with the homelessness of Father and A.B. (Mother). N.T., 8/22/19, at 4. Also, the Agency learned that Children were injured as a result of domestic violence between Father and Mother, including non-specified bruising to O.J.B. and an eye injury to T.S.B. Id. at 4, 25. As a result of Children's injuries, Father was charged with crimes related to child endangerment, which were pending at the time of the underlying proceeding. Orphans' Court Opinion, 10/2/19, at 6 n. 3.

Children were adjudicated dependent on August 27, 2018. The Agency established permanency goals of reunification and required Father and Mother to comply with the following family service plan (FSP) objectives: complete mental health services, which included anger management and domestic violence counseling; complete drug and alcohol services; participate in random urine drug screens; maintain gainful employment; maintain safe and stable housing; and participate in a parenting program that included hands-on education during supervised visits with Children. Id. at 5-6.

Permanency review hearings occurred on November 14, 2018 and May 13, 2019. The juvenile court found that Father did not comply with any of his

FSP objectives during either of the review periods. The court changed Children's permanency goal to adoption on May 13, 2019.

On July 3, 2019, the Agency filed petitions for the involuntary termination of Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). A hearing occurred on August 22, 2019, during which the Agency presented the testimony of its caseworker, Melina Harden. Father and Mother testified on their own behalf. During the hearing, Children, then two and three years old, were represented by guardian ad litem Christine Konzel, Esquire, who cross-examined all of the witnesses and argued on the record and in open court that it was in Children's best interests for the parental rights of Father and Mother to be terminated.[1] See N.T., 8/22/19, at 53.

_____

[1] Pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome. See In re T.S., 192 A.3d 1080 (Pa. 2018) (citing In re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017)). Further, the T.S. Court held, "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S.A. § 2313(a), is satisfied where the court has appointed an attorney-guardian ad litem who represents the child's best interests during such proceedings." T.S., 192 A.3d at 1092-1093.

J-S11029-20

By decrees dated August 22, 2019, and entered August 27, 2019, the orphans' court involuntarily terminated Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). On September 23, 2019, Father timely filed notices of appeal, which this Court consolidated sua sponte.[2] That same day, Father's court-appointed counsel filed a statement of intent to file a brief pursuant to Anders v. California.[3] See In re J.T., 983 A.2d 771, 774 (Pa. Super. 2009) (holding that decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper). The orphans' court filed its Rule 1925(a) opinion on October 2, 2019.

_____

[2] Mother did not file notices of appeal.

[3] Pa.R.A.P. 1925(c)(4) provides:

> (c) Remand.
>
> . . .
>
>> (4) In a criminal case, counsel may file of record and serve on the judge a statement of intent to file an Anders/McClendon brief in lieu of filing a Statement. If, upon review of the Anders/McClendon brief, the appellate court believes that there are arguably meritorious issues for review, those issues will not be waived; instead, the appellate court may remand for the filing of a Statement, a supplemental opinion pursuant to Rule 1925(a), or both. Upon remand, the trial court may, but is not required to, replace appellant's counsel.

Pa.R.A.P. 1925(c)(4).

- 4 -

On December 23, 2019, Counsel filed a petition with this Court requesting to withdraw from representation, and submitted a brief pursuant to Anders and Santiago. We begin by reviewing Counsel's request to withdraw. See Commonwealth v. Rojas, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported Anders brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting Commonwealth v. Smith, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

This Court "extended the Anders principles to appeals involving the termination of parental rights." In re X.J., 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to Anders, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [Anders] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

Commonwealth v. Cartrette, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing Commonwealth v. Lilley, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of Anders, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." Commonwealth v. Millisock, 873 A.2d 748, 752 (Pa. Super. 2005).

- 5 -

Additionally, an Anders brief must comply with the following substantive requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Santiago, 978 A.2d at 361.

Instantly, Counsel filed a petition to withdraw certifying that he reviewed the case and determined that Father's appeal was frivolous. Counsel also filed a brief that includes a summary of the history and facts of the case, the issues raised by Father, the facts that arguably support the appeal, and Counsel's assessment of why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition a letter he sent to Father pursuant to Millisock, supra. Therefore, Counsel complied with the requirements of Anders and Santiago.

We must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." Commonwealth v. Yorgey, 188 A.3d 1190, 1197 (Pa. Super. 2018) (en banc).

Counsel's Anders brief raises the following two issues for our review:

- 6 -

I. DID THE ORPHANS' COURT COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW WHEN IT CONCLUDED THAT THE AGENCY ESTABLISHED SUFFICIENT GROUNDS FOR TERMINATION UNDER 23 Pa.C.S.A. § 2511?

II. DID THE ORPHANS' COURT COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW WHEN IT CONCLUDED THAT TERMINATION OF [FATHER'S] PARENTAL RIGHTS WAS IN THE CHILDREN'S BEST INTERESTS UNDER SECTION 2511(b)?

Anders Brief at 7.

At the outset, we recognize:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). In this case, we conclude that the certified record supports the decrees pursuant to Section 2511(a)(2) and (b), which provides:

(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements of Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. In re A.L.D. 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. Id. Further, the grounds for termination under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. Id. at 337.

With respect to Section 2511(b), this Court has stated, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the

effect on the child of permanently severing that bond." Id. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." In re K.Z.S., 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Here, the orphans' court explained:

[I]n support of its order terminating Father's parental rights, the court finds that[,] by his own admission[,] Father: (1) [s]uffers from untreated mental illness; (2) is essentially homeless (he occasionally stays with his mother); (3) is unemployed and not actively seeking employment; and, accordingly, (4) has failed to establish and maintain a lifestyle that would permit him to provide long-term care for Children. The court further finds that based on the credible testimony of the Agency caseworker, Ms. Harden, unrebutted by Father, Father failed to comply with required services both before and after his periods of incarceration in late 2018, and early 2019. Father failed to attend any mandated urine drug screens, which he understood were a necessary first step to obtaining visitation with Children. He has a history of substance abuse dating back to 2004, and has current drug-related charges pending, yet he refused recommended drug and alcohol treatment. To the extent Father asserts he was hindered in complying with the permanency plan by lack of transportation, the court finds his excuse wholly lacking in merit. Ms. Harden testified that Father repeatedly missed meetings, appointments, and urine drug screens without advance notice. Were [Father] serious about obtaining the Agency's help in meeting his responsibilities under the permanency plan, he could and should have contacted the Agency to address his difficulties.

The court does not doubt that Father loves Children and desires their return; . . . Unfortunately, no evidence was presented to support a conclusion that the current conditions and causes of Father's parental incapacity will be remedied in the foreseeable future. . . .

Orphans' Court Opinion, 10/2/19, at 9-10.

Our review supports the court's findings. The Agency caseworker, Ms. Harden, testified that Father and Mother arrived late for Children's adjudication hearing. N.T., 8/22/19, at 6. Ms. Harden testified that Father and Mother entered the courthouse after the hearing concluded and as she was leaving; however, she and her supervisor had an opportunity to speak with them. Id. at 6-7. Ms. Harden testified:

Q. And what was discussed at that time with the parents?

A. We had addressed with them that they were going to be offered the court-ordered treatment plan, mental health services, drug and alcohol and so on. They were going to need to remain in contact with me, because I was going to have to set them up for urines. . . . I gave them my contact information at that time, and we had just again, reiterated multiple times, the biggest thing was to remain in touch, to go to [the lab] for urines so they could have [supervised] visits [with Children].

Id. at 7.

Ms. Harden testified that during the first permanency review period, she attempted to meet with Father and Mother on more than one occasion to discuss their court-ordered treatment plan, but they did not keep their appointments. Id. at 9-10. Ms. Harden testified that Father and Mother never inquired about transportation or requested that she provide them with bus passes. Id. at 10. In addition, the parents did not provide Ms. Harden with their home address. Id. During a telephone call with Father on October 4, 2018, in an attempt to schedule an appointment, Ms. Harden stated, "He was

extremely agitated. It was very hard to keep the dialogue going with him, and I did have to end that phone call due to him being so agitated." Id.

Ms. Harden testified that she finally met with Father on December 20, 2018, when he was incarcerated. Id. at 14. Ms. Harden explained that at an unspecified time after the first permanency review hearing, Father was incarcerated on criminal charges involving possession of drug paraphernalia and weapons, and the criminal case was pending at the time of the underlying proceeding. Id. at 8, 14. Ms. Harden testified that during her conversation with Father in prison, he "was completely in denial about the reasons why [C]hildren were removed. He placed all the blame for the circumstances on [M]other, [and] took no responsibility for the domestic violence they were engaging in." Id. at 15.

Ms. Harden further testified that Father was released from prison at an unspecified time, but was re-incarcerated on February 10, 2019, through April 12, 2019, due to criminal charges involving a physical altercation with Mother. Id. at 16. Upon his release from this incarceration, Ms. Harden stated, "[Father] did come to the Agency to visit prior to the permanency review [hearing] in May of [2019]." Id. at 17. Ms. Harden reiterated the permanency plan requirements to Father, and testified that he understood what he needed to do to reunify with Children. Id. However, Father did nothing to remedy the conditions which led to Children's placement. Id. at 17-18.

Specifically, because Father did not comply with drug urinalysis testing, Father did not have supervised visitation with Children from the time of their placement in August of 2018. Id. at 8-9, 18. Ms. Harden testified that Father tried to see Children at their kinship care home on multiple occasions, "but the kinship family did not allow him to see them." Id. at 26. She explained that approximately one month before the termination hearing, Father went to the kinship home, which resulted in the police being called, a 302 petition[4] being filed, and Father being admitted to the hospital for 10 days. Id. at 26-27.

Father testified, "the reason why I was 302'd was because I actually got naked to show my sign of faith, and to show that I, like, you know, have faith in God. And I didn't see anything like they were trying to say. I believe that I was showing my faith to God, that I believe that what I was being shown was his plan. And since then, I still continue being led through people and different signs of metaphoric communication through people." Id. at 34. Father testified that following a drug and alcohol assessment, it was

_____

[4] Section 302 of the Mental Health Procedures Act, 50 P.S. § 7302, provides: "Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination." 50 P.S. § 7302(a) (Involuntary emergency examination and treatment authorized by the physician--not to exceed one hundred twenty hours) (amended October 24, 2018, effective April 22, 2019).

recommended that he "do inpatient." Id. at 33. Father explained, "My reason why I didn't [enter inpatient drug and alcohol treatment] is because . . . since I was released the last time from prison, I've sought out a spiritual enlightenment in God, and seen miraculous things, not hallucinations from drugs." Id. at 34. Father testified that he was not treating for mental health illness because "I just turned it back over to God, . . . and I've been just going through this spiritual journey." Id. at 35, 44.

With respect to whether he has safe and stable housing, Father testified, "Right now, I'm not doing so well with that, because I've been following a spiritual quest, a journey, because I believe it will bring my kids back to me." Id. at 35-36. On cross-examination by the guardian ad litem, Father stated that he does not have permanent housing, but "I stay with my mom here and there." Id. at 50. Moreover, Father acknowledged "I'm not prepared . . . at this time to actually take my kids back, anything like that. . . ." Id.

In sum, the evidence demonstrates that Father's repeated and continued incapacity has caused Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being. We discern no abuse of discretion by the court in concluding that the causes of Father's incapacity cannot or will not be remedied, and thus we do not disturb the court's conclusion that the Agency satisfied its evidentiary burden pursuant to Section 2511(a)(2).

We next review the orphans' court's determination pursuant to Section 2511(b). This Court has emphasized:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011)). In addition, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." In re T.S.M., 71 A.3d at 268. Moreover, the Court directed that in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." Id. at 269. The T.S.M. Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." Id.

Here, the orphans' court concluded:

> [P]rimarily due to the young age of Children at the time of separation, and the lapse of over a year since they've had any

> contact with the parents, the court finds that it is unlikely any bond between Father and Children persists. Ms. Harden testified that Children do not ask for the parents, and actively seek and receive parental nurturing from the adoptive resource family. . . . Children are placed in a kinship home that provides for their developmental, physical and emotional needs and welfare, and they are doing well there. . . .

Orphans' Court Opinion, 10/2/19, at 11. Again, the record supports the court's findings.

As there was no evidence of a parent-child bond between Father and Children, it was reasonable for the court to infer that no bond exists. See In re K.Z.S., 946 A.2d at 762-763. Ms. Harden testified that Children last saw Father approximately one year prior, in August 2018, when they were one and two years old, and they "don't ask about [Father], or speak about him either." N.T., 8/22/19, at 18, 25. She testified that Children are placed in a pre-adoptive kinship home with their paternal aunt and uncle, whom they consider "to be like their parents." Id. at 19-20. Ms. Harden stated that "Children go to [their kinship parents] for comfort, [and to] have their needs met. They are just doing extremely well in that home." Id. at 20. As such, Ms. Harden opined that termination of Father's rights would not have a detrimental effect on Children. Id. at 18. On this record, the orphans' court did not err in concluding that termination of Father's parental rights was consistent with Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

In conclusion, our independent review of the certified record reveals no preserved non-frivolous issue that would arguably support this appeal. Therefore, we grant Counsel's petition to withdraw from representation, and affirm the decrees terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Counsel's petition to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2020